

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
03/22/2017

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ROBERT L. PENDERGRAFT,** *et al* | § | **CASE NO: 16-33506** |
| **Debtor(s)** | § | |
| | § | **CHAPTER  11** |
| | § | |
| **JANE M. PENDERGRAFT** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-03246** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| **DEPARTMENT OF THE TREASURY** | § | |
| **INTERNAL REVENUE SERVICE** | § | |
| **Defendant(s)** | § | |

## <u>MEMORANDUM OPINION</u>

Jane Pendergraft filed this adversary proceeding against the United States of America, Department of the Treasury, Internal Revenue Service to determine the validity of her tax liability under 11 U.S.C. § 505(a)(1), to object to the IRS's proof of claim under 11 U.S.C. § 502(b)(1) and FED. R. BANKR. P. 3007(b), and to determine the validity, priority, and extent of the IRS's lien against her homestead under 11 U.S.C. § 506.  The IRS moved to dismiss Ms. Pendergraft's complaint and amended complaint on the basis that the Court lacks subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) and FED. R. BANKR. P. 7012 to determine whether Ms. Pendergraft is entitled to innocent spouse relief from her tax liability under 26 U.S.C. § 6015. The IRS's motion to dismiss is denied.  However, the Court interprets 26 U.S.C. § 6015(e)(1)(A) as preventing the Court from exercising its authority until after the earlier of the Secretary of the Treasury's mailing of his or her final determination of equitable relief under 26 U.S.C. § 6015(f) or 6 months after Ms. Pendergraft requested such relief.

## Background

Ms. Pendergraft is 66 years old and was married to her co-debtor, Robert Pendergraft. (ECF No. 10 at 3). Ms. Pendergraft purchased a home as her separate property prior to her marriage and treated that home as her homestead. (ECF No. 10 at 3). On May 27, 1988, the day before her marriage to Mr. Pendergraft, Ms. Pendergraft transferred a one-half separate property interest in her homestead to Mr. Pendergraft by warranty deed in exchange for a promissory note. (ECF No. 10 at 3). Mr. Pendergraft assumed the first lien mortgage note on the homestead and executed a deed of trust in favor of Ms. Pendergraft that secured his promissory note. (ECF No. 10 at 3). Title to the homestead has not changed since 1988. (ECF No. 10 at 3).

During their marriage, Mr. and Ms. Pendergraft allege that they split their household responsibilities; Mr. Pendergraft purportedly took exclusive responsibility for the financial activities of the homestead, including the preparation and paying of taxes. (ECF No. 10 at 3). Ms. Pendergraft operates a private psychotherapy practice where she works part-time while completing her responsibilities of child care and maintaining the family household. (ECF No. 10 at 3). Mr. and Ms. Pendergraft maintained separate bank accounts; Ms. Pendergraft allegedly held no access to Mr. Pendergraft's separate bank account. (ECF No. 10 at 3).

Allegedly unbeknownst to Ms. Pendergraft, Mr. Pendergraft failed to timely file the couple's income tax returns for tax years 2001–06. (ECF No. 10 at 4; ECF 11 at 11). Additionally, Mr. Pendergraft did not pay any of the tax balances due on the couple's 2001-06 returns. (ECF No. 10 at 4). Ms. Pendergraft timely signed each of her tax returns before giving them to Mr. Pendergraft to submit to the IRS. (ECF No. 10 at 4). According to Ms. Pendergraft, she did not know nor had any reason to know that her tax returns had not been filed or that her taxes had not been paid. (ECF No. 10 at 4).

In 2008, Ms. Pendergraft discovered that the IRS levied on several of her bank accounts. (ECF No. 10 at 4).  After initially denying any knowledge of the reasons behind the IRS levies, Mr. Pendergraft confessed to Ms. Pendergraft that he had forgotten to pay the couple's taxes for one year and that he had never received any written notices of non-payment from the IRS.  (ECF No. 10 at 4).  In response, Ms. Pendergraft implored her husband to see a therapist and attend Debtors Anonymous.  (ECF No. 10 at 4).

Subsequently, Mr. Pendergraft informed Ms. Pendergraft that he retained legal counsel and tax accountants in order to solve the couple's tax issues with the IRS.  (ECF No. 10 at 5).  As a result of this representation, Mr. Pendergraft claimed that an agreement had been made with the IRS to pay $10,000 per month for an extended period of time in order to pay off their accrued tax balance.  (ECF No. 10 at 5).  Thereafter, Mr. Pendergraft assured Ms. Pendergraft that their tax returns were being timely filed.  (ECF No. 10 at 5).

From 2008–16, Mr. Pendergraft may have misappropriated the money given to him by Ms. Pendergraft for the purpose of paying her income and property taxes.  (ECF No. 10 at 5). Mr. Pendergraft had all correspondence with the IRS sent to him at his office address, purportedly in order to prevent Ms. Pendergraft from learning about any delinquencies on their tax repayment plan.  (ECF No. 10 at 5).  All notices of federal tax liens filed by the IRS in Harris County, Texas, from 2008–16 to secure the Pendergrafts' taxes, penalties, and interest were also sent to Mr. Pendergraft's office address.  (ECF No. 10 at 6).

On June 29, 2016, Mr. and Ms. Pendergraft attended a meeting with their legal counsel where Ms. Pendergraft allegedly learned for the first time that Mr. Pendergraft had not paid their income and property taxes for the last 15 years, that they owed over $2 million in taxes,

penalties, and interest to the IRS, and that they faced possible criminal prosecution.  (ECF No. 10 at 6).

Ms. Pendergraft's legal counsel allegedly informed her that she must join Mr. Pendergraft in filing for bankruptcy in order to prevent the IRS from seizing their homestead, arresting them, and prosecuting them for their tax violations.  (ECF No. 10 at 6).  Consequently, Mr. and Ms. Pendergraft filed a joint chapter 11 bankruptcy petition on July 12, 2016.  On August 5, 2016, the IRS filed a proof of claim for the taxes, penalties, and interest owed by Mr. and Ms. Pendergraft in the amount of $2,508,854.07; the IRS amended its proof of claim to the amount of $2,506,354.07 on August 24, 2016.  (ECF No. 10 at 7).  Of the IRS's total claim, $653,669.80 is secured by tax liens, $1,852,684.27 is unsecured, and $272,726.99 of the unsecured portion is entitled to priority under 11 U.S.C. § 508(a)(8).  (ECF No. 10 at 7).

On October 20, 2016, the Court issued an order authorizing Mr. and Ms. Pendergraft to proceed with a divorce in a state court with appropriate jurisdiction.  (Case No. 16-22506, ECF No. 68).

On November 4, 2016, Ms. Pendergraft filed this adversary proceeding against the IRS to determine the validity, priority, and extent of the IRS's lien against her homestead under 11 U.S.C. § 506, and to object to the IRS's proof of claim under 11 U.S.C. § 502(b)(1), 26 U.S.C. § 6015, and FED. R. BANKR. P. 3007(b).  (ECF No. 1 at 6–8).  In response, the IRS filed a FED. R. CIV. P. 12(b)(1) motion to dismiss Ms. Pendergraft's complaint on December 14, 2016, arguing that the Court lacks subject matter jurisdiction to determine whether Ms. Pendergraft is entitled to innocent spouse relief under 26 U.S.C. § 6015.  (ECF No. 5 at 1).  Ms. Pendergraft filed an amended complaint on January 30, 2017, asking the Court to additionally determine the validity of Ms. Pendergraft's tax liability under 11 U.S.C. § 505(a)(1).  (ECF No. 10 at 7–13).

On February 17, 2017, the IRS filed a motion to dismiss Ms. Pendergraft's amended complaint on the same basis as its previous motion to dismiss.  (ECF No. 11 at 1).

The Court held a hearing on the IRS's motions to dismiss on February 27, 2017.  At the conclusion of the hearing, the Court took this matter under advisement.

## Analysis

The IRS contends that Ms. Pendergraft's complaint should be dismissed under FED. R. CIV. P. 12(b)(1) because the Court cannot assert subject matter jurisdiction over an innocent spouse determination under 26 U.S.C. § 6015.  (ECF No. 11 at 1).  Specifically, the IRS argues that a bankruptcy court's jurisdiction is limited by the fact that it is a judicial officer of the district court, that the structure of 26 U.S.C. § 6015(f) vests the determination of innocent spouse relief strictly in the IRS and tax courts, and that the United States has not consented to being sued on the innocent spouse issue in bankruptcy court.  (ECF No. 11 at 2–11).

### *Bankruptcy Court Jurisdiction*

When interpreting a statute, it is ultimately the Court's responsibility to "give words their ordinary construction and provide the statute's intended meaning."  *Burnett v. Stewart Title, Inc.*, 431 B.R. 894, 899 (S.D. Tex. 2010).  Courts "follow the plain meaning of a statute unless it would lead to a result so bizarre that Congress could not have intended it."  *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991); *see also Crooks v. Harrelson*, 282 U.S. 55, 59–60 (1930) (finding that "the absurdity must be so gross as to shock the general moral or common sense" in order to interpret a statute contrary to its plain meaning); *In re Guerrero*, 540 B.R. 270, 274 (Bankr. S.D. Tex. 2015) (acknowledging that "[i]f a statute unambiguously expresses one meaning, the analysis ends with a faithful application of that meaning").

Under the U.S. Tax Code, co-debtors and spouses that file joint federal income tax returns may incur joint and several liability with respect to each of their tax liabilities.  26 U.S.C. § 6013(d)(3).  However, if:

> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and (2) relief is not available to such individual under subsection (b) or (c), the Secretary [of the Treasury] may relieve such individual of such liability.

26 U.S.C. § 6015(f).

Section 6015(f) does not allow a bankruptcy court to exercise initial subject matter jurisdiction over an innocent spouse defense because only the Secretary receives the equitable power to grant innocent spouse relief under that Section.  Specifically, Section 6015(f) allows equitable relief "under procedures prescribed by the Secretary" and only states that "the Secretary may relieve such individual of such liability."  26 U.S.C. § 6015(f).  Additionally, no evidence has been submitted or could be found suggesting that such an interpretation of Section 6015(f) leads to a bizarre result in direct contravention of Congress's intentions for the provision.  Accordingly, the Court determines that it cannot grant Ms. Pendergraft innocent spouse relief under Section 6015(f).

Nevertheless, 26 U.S.C. § 6015(e)(1)(A) ultimately allows a court to grant innocent spouse relief if it is denied by the Secretary or if the Secretary fails to make a determination within 6 months.  Section 6015(e)(1) states that, in a case where an individual requests equitable relief under Section 6015(f), "In addition to any other remedy by law, the individual may petition the Tax Court to determine the appropriate relief available to the individual under this section . . . ."  26 U.S.C. § 6015(e)(1)(A).  It is unambiguous that a Tax Court—and not just the Secretary— may grant relief to an individual.  Moreover, the remedy available in the Tax Court is "[i]n addition to any other remedy provided by law."  26 U.S.C. § 6015(e)(1)(A).

11 U.S.C. § 505 is another "remedy provided by law."  Section 505(a)(1) specifically provides bankruptcy courts with remedial power over tax liabilities and penalties; that section states that:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1).  This statutory language provides a bankruptcy court with the power to determine the legality of taxes and tax penalties.

Interpreting Section 505(a)(1) as allowing a bankruptcy court subject matter jurisdiction to review the Secretary's grant or denial of equitable relief does not lead to a bizarre result in non-conformance with Congress' intentions in creating the provision.  The legislative history of Section 505's enactment indicates that Congress intended bankruptcy courts to have the jurisdiction to determine certain tax issues for the benefit of the estate.  124 CONG. REC. H. 11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6436, 6490 ("Authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax . . . of the debtor or the estate."); 124 CONG. REC. 32414 (1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.C.C.A.N. 6436, 6492–93 ("The bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes."); 124 CONG. REC. 34014 (1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6562.

In addition, the legislative history of Section 505's enactment shows that Congress drafted the provision for the purpose of providing a forum for the swift determination of claims,

including tax claims, so that such claims would not delay the administration of a bankruptcy estate.  124 CONG. REC. H11095; *In re Millsaps*, 133 B.R. 547, 554 (Bankr. M.D. Fla.); *see also In re Diez*, 45 B.R. 137, 139 (Bankr. S.D. Fla. 1984) (citing *Cohen v. United States*, 115 F.2d 505 (1st Cir. 1940)).

Congress did not intend bankruptcy courts to be a forum for tax issues when no need exists for a determination of the amount of the tax for estate administration purposes.  124 CONG. REC. H11095, H11110–H11111 (1978).  In the case of Ms. Pendergraft, a determination of her tax liability under Sections 6015 and 505 directly affects the administration of her bankruptcy estate because the IRS filed such liability as a proof of claim in her bankruptcy case.  (ECF No. 10 at 7).  Due to the plethora of legislative history supporting bankruptcy courts' jurisdiction over tax claims in certain instances, finding the Court to have subject jurisdiction in this case to determine Ms. Pendergraft's innocent spouse status would not be a bizarre result against Congress' intentions for Section 505.

The Court's interpretation of Sections 6015(e)(1)(A) and 505(a)(1) conforms to relevant Fifth Circuit case law and other persuasive sources.  In *In re Luongo*, a debtor sought to compel the IRS to turnover her prepetition income tax overpayment.  This amount had been set-off against her unpaid tax liability from another tax year that had been discharged.  259 F.3d 323, 327 (5th Cir. 2001).  The Fifth Circuit ruled that Section 505 grants a bankruptcy court broad jurisdiction to determine the legality of any tax liability of the debtor limited only by the Section's express limitations and the bankruptcy court's discretion to abstain.  259 F.3d at 328; *see also In re Hinsley*, 69 F. App'x 658 (5th Cir. 2003)  In support of its determination, the Fifth Circuit cited to legislative statements underlining the authority of a bankruptcy court to

determine the specific liability of a debtor, not just the estate.  *See* 124 Cong. Rec. H. 11110; 124 Cong. Rec. 32414; 124 Cong. Rec. 34014.

In addition to the Fifth Circuit, a significant number of courts outside of the Fifth Circuit previously ruled in support of a bankruptcy court's authority to determine and remedy a debtor's tax liability under Section 505(a)(1).  *See United States v. Wilson*, 974 F.2d 514, 517 (4th Cir. 1992) ("The Bankruptcy Code requires bankruptcy courts to defer to the tax court only where the claim was contested and adjudicated by the tax court before the commencement of the bankruptcy case."); *In re Guardian Trust Co.*, 260 B.R. 404, 414 (S.D. Miss. 2000) (once the IRS files a proof of claim, "no additional burden is levied by arming the bankruptcy court with jurisdiction to order a refund should those liability issues be resolved in favor of the taxpayer."); *In re Stevens*, 210 B.R. 200, 202 (Bankr. M.D. Fla. 1997)  ("Congress wanted to provide a forum for the quick resolution of disputed tax claims in order to avoid any delay in the conclusion of the administration of the bankruptcy case."); *In re D'Alessio*, 181 B.R. 756, 759 (Bankr. S.D.N.Y. 1995) ("The IRS does not challenge the fact that Section 505 of the Bankruptcy Code gives me the discretionary authority to fix and determine the legality of a tax."); *Sabath v. C.I.R.*, 90 T.C.M. (CCH) 315 (T.C. 2005); T.C. Memo 2005-222 (when the IRS submits proof of claim, taxpayer and trustee may object to it under 505(a)).

The IRS cites to multiple cases and authorities in support of its arguments against bankruptcy court jurisdiction over innocent spouse relief.  *See Simmons Perrine Moyer Bergman, PLC v. Coleman*, 2013 WL 1080666, at *7–8 (N.D. Iowa Mar. 14, 2013) ("Any adverse ruling by the Commissioner must then be taken to the Tax Court."); *United States v. LeBeau*, 2012 WL 835160, at *3 (S.D. Cal. Mar. 12, 2012) (stating that the district court only has jurisdiction to decide an innocent spouse issue when the taxpayer files a refund suit while a § 6015 petition is

pending in tax court); *United States v. Boynton*, 2007 WL 737725, at *4 (S.D. Cal. Feb. 1, 2007) ("It is difficult to believe that Congress would have created a situation fraught with possibilities for inconsistent judgments and contrary to basic principles of judicial economy with the phrase, "[i]n addition to any other remedy provided by law."); *In re French*, 255 B.R. 1, 2 (Bankr. N.D. Ohio 2000) (finding bankruptcy court to be an improper forum for innocent spouse determinations).

The IRS's supporting case law is unpersuasive for multiple reasons. First, none of the IRS's cases definitively invalidate or even acknowledge the Fifth Circuit precedent interpreting 11 U.S.C. § 505(a)(1) as allowing bankruptcy courts to determine the legality of a tax, fine, or penalty.

Second, a finding that bankruptcy courts have jurisdiction over innocent spouse claims follows the plain language of the procedures laid out in 26 U.S.C. § 6015(e). The IRS points to non-Fifth Circuit cases that limit the review of the Secretary's determination of equitable relief to tax courts while district courts may only exercise jurisdiction over refund suits while a Section 6015 petition is pending in tax court. *Simmons Perrine Moyer Bergman, PLC v. Coleman*, 2013 WL 1080666, at *7–8; *United States v. LeBeau*, 2012 WL 835160, at *3. However, Section 6015(e) explicitly contemplates that an individual may petition the tax court or elect to use "any other remedy provided by law" to review the Secretary's determination of relief or lack thereof. 26 U.S.C. § 6015(e)(1)(A)(i). Additionally, a bankruptcy court's determination of a tax is procedurally considered an avenue of review and remedy of a tax's legality under Fifth Circuit and tax court rulings. *In re Luongo*, 259 F.3d 323, 328 (5th Cir. 2001); *In re Hinsley*, 69 F. App'x 658 (5th Cir. 2003); *Butler v. C.I.R.*, 114 T.C. 276, 288–89 (2000); *Kendricks v. C.I.R.*, 124 T.C. 69, 77 (2005); *Sabath v. C.I.R.*, 90 T.C.M. (CCH) 315 (T.C. 2005).

Third, a finding that bankruptcy courts have jurisdiction over innocent spouse claims under Section 6015(e)(1)(A) would not lead to inconsistent judgments, be contrary to basic principles of judicial economy, or provide a contrary result from what Congress intended in enacting the provision. The IRS cites to the concept that the U.S. Congress could not have intended to grant bankruptcy courts jurisdiction over innocent spouse claims under Section 6015(e)(1)(A) because it could lead to situations where bankruptcy courts and tax courts adjudicated the same issues at the same time. *United States v. Boynton*, 2007 WL 737725, at *4 (S.D. Cal. Feb. 1, 2007). Initially, that is not the situation in this case: there is no Tax Court proceeding. Moreover, the Court cannot determine its subject matter jurisdiction based on a hypothetical possibility that concurrent proceedings could produce inconsistent results. This issue, if it ever exists, should be left to Congress.

Based on the language of 26 U.S.C. § 6015(e)(1)(A), relevant Fifth Circuit and other persuasive case law, and the unpersuasive nature of the IRS's arguments and supporting case law, the Court finds that it has jurisdiction to review the legality of Ms. Pendergraft's taxes, penalties, and interests under 26 U.S.C. § 6015(e)(1)(A) and 11 U.S.C. § 505.

***Sovereign Immunity***

The United States alleges that it has not waived sovereign immunity. 11 U.S.C. § 106(a) states that "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: Sections . . . 505 . . . ." 11 U.S.C. § 106(a)(1). Giving this statutory language its ordinary construction, Section 106(a) waives the sovereign immunity of the United States in the event that a bankruptcy court exercises its remedial power over tax liabilities and penalties under Section 505(a)(1). The waiver of sovereign immunity in this case would not lead to a bizarre

result contrary to the intentions of Congress, as seen through the successful exercising of subject matter jurisdiction over tax issues by bankruptcy courts under Section 505. *See, e.g.*, *In re Luongo*, 259 F.3d 323, 328–30 (5th Cir. 2001); *In re Hinsley*, 69 F. App'x 658 (5th Cir. 2003); *In re Wyly*, 552 B.R. 338 (Bankr. N.D. Tex. 2016).

Because the Court may exercise its remedial power over tax liabilities and penalties under Section 505(a)(1), the sovereign immunity of the United States is waived under Section 106(a) as to Ms. Pendergraft's innocent spouse claim.

### Section 6015(e) and (f) Review Procedure

Although the Court has subject matter jurisdiction to determine whether an individual is entitled to innocent spouse relief under 26 U.S.C. § 6015(e) and 11 U.S.C. § 505(a), the Court must nevertheless wait for the Secretary of the Treasury's determination of equitable entitlement under 26 U.S.C. § 6015(f) before exercising its subject matter jurisdiction.

As previously stated, an individual may request that the Secretary "relieve such individual" under Section 6015(f) of joint and several liability for any unpaid tax or deficiency caused by the illegal actions of that individual's spouse. 26 U.S.C. § 6015(f). To request such relief, an individual must: file a Form 8857 "Request for Innocent Spouse Relief;" submit a written statement containing the same information as the Form 8857 signed under penalty of perjury; or submit information in a manner prescribed by the Treasury Department and IRS. 26 C.F.R. § 1.6015-5. The Secretary then "has the discretion to grant equitable relief from joint and several liability to a requesting spouse" after considering all of the facts and circumstances. 26 C.F.R. § 1.6015-4; *see also* REV. PROC. 2003-61, 2003-2 C.B. 296 (2003) (describing the situations in which the Secretary may grant equitable relief under Section 6015(f)).

If an individual requests equitable relief from the Secretary under Section 6015(f), "In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available . . . ."  26 U.S.C. § 6015(e)(1)(A); *Simmons Perrine Moyer Bergman, PLC v. Coleman*, 2013 WL 1080666, at *7– 8 (N.D. Iowa Mar. 14, 2013), *report and recommendation adopted*, 2013 WL 1562972 (N.D. Iowa Apr. 15, 2013).  This request for relief from the tax court must be filed:

> at any time after the earlier of--(I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or (II) the date which is 6 months after the date such election is filed or request is made with the Secretary . . . .

26 U.S.C. § 6015(e)(1)(A)(i)(I)–(II).  A request for relief must be made "not later than the close of the 90th day after" the Secretary mails notice of his or her final determination under Section 6015(e)(1)(A)(i)(I).  26 U.S.C. § 6015(e)(1)(A)(ii).

Although the Court recognizes that there is an ambiguity as to whether the built-in statutory delay is only directly applicable under 26 U.S.C. § 6015(e), a better reading of the statute as a whole requires that the "any other remedy provided by law," including a bankruptcy court determination of innocent spouse relief under 11 U.S.C. § 505(a)(1), must wait a similar period of time.   This Court's Section 505 review function is to review the Secretary's determination.  Section 505 does not give the Bankruptcy Court a free hand to determine whether equitable relief is appropriate.   Consequently, the Court should not exercise it subject matter jurisdiction to determine the legality of a tax or tax penalty and grant relief until after the Secretary makes his final determination or 6 months after the individual requests equitable relief from the Secretary under Section 6015(f).

The Court's interpretation of Section 6015 procedure comports with existing case law interpreting the procedures of Section 6015 of the Tax Code.  *See, e.g.*, *Christensen v. C.I.R.*, 523 F.3d 957, 959 (9th Cir. 2008) ("Under . . . § 6015(e), the Tax Court would have had express jurisdiction over [taxpayer's] § 6015(f) claim."); *United States v. Hirsch*, No. 10-CV-1006 RRM RML, 2014 WL 4385839, at *7 (E.D.N.Y. Sept. 4, 2014) ("[F]or tax liabilities . . . the amendment gives the Tax Court jurisdiction to hear a taxpayer's appeal concerning a 6015(f) application, provided the taxpayer petitions the Tax Court within ninety days of the denial."); *Butler v. C.I.R.*, 114 T.C. 276, 288–89 (2000), *abrogated by Porter v. C.I.R.*, 132 T.C. 203 (2009) ("This Court has stated that there exists a strong presumption that the actions of an administrative agency are subject to judicial review."); *Ogonoski v. C.I.R.*, 87 T.C.M. (CCH) 1038 (T.C. 2004) ("If a taxpayer's request for relief under section 6015 is denied, the taxpayer may petition this Court under section 6015(e)(1) for a review of the Commissioner's determination.").

Accordingly, Ms. Pendergraft must follow the procedures of Section 6015(f) before petitioning the Court for a remedy under Section 505(a)(1) of the Bankruptcy Code. Specifically, Ms. Pendergraft must first file a Form 8857, submit a signed and written statement containing the same information as Form 8857, or submit information as prescribed by the Treasury Department and IRS.  Then, after the earlier of the Secretary's mailing of his final determination of equitable relief, or 6 months after requesting such equitable relief, this Court will exercise its subject matter jurisdiction.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **March 22, 2017.**

_____
                    Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE